CLERK OF THE COURT
Form [Rule 3.25] **FILED**

OCT 19 2015

Clerk's Stamp

JUDICIAL CENTRE OF CALGARY

| | |
|---|---|
| COURT FILE NUMBER | 1501-03205 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |
| PLAINTIFF(S) | PHOENIX PRECISION LTD. and 840501 ALBERTA LIMITED |
| DEFENDANT(S) | PARKER HANNIFIN CANADA and PARKER HANNIFIN CORPORATION, |
| DOCUMENT | **Amended Amended Statement of Claim** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Miles Davison LLP 900, 517 10 Avenue SW Calgary, Alberta T2R 0A8 Attn: Terry Czechowskyj Ph: 403-298-0326 Fax: 403-263-6840 File: 40071 |

AMENDED this _____ 19 _____ day of _____ October _____ Pursuant to Rule _____ 3.62 _____ dated the _19_ day of _October_

CLERK OF THE COURT

**NOTICE TO DEFENDANTS**

You are being sued. You are a defendant.

Go to the end of this document to see what you can do and when you must do it.

**Note: State below only facts and not evidence (Rule 13.6)**

**Statement of facts relied on:**

   *The Parties*

1.     The Plaintiff, Phoenix Precision Ltd. ("Phoenix") is a body corporate carrying on business in the Province of Alberta through an office in Calgary located at 2620 21st Street N.E. The principal business of Phoenix is the manufacture of instrumentation valves and instrumentation manifolds and related equipment.

2.     The Plaintiff, 840501 Alberta Limited ("840501") is a body corporate carrying on business in the Province of Alberta. Phoenix and 840501 have common ownership, control and management. Prior to January 7, 2014, the premises at 2620 - 21st Street N.E. in Calgary were held in 840501.

2

3.      The Defendant, Parker Hannifin Canada ("Parker Canada") is a partnership organized under the laws of Ontario between and among two corporations, Parker Canada Investment Co. and Parker Canada Holding Co., both of which are based in Nova Scotia.

4.      The Defendant, Parker Hannifin Corporation ("Parker USA") is a publicly traded American corporation based in the State of Ohio.

5.      Parker Canada and Parker USA operate as a single group enterprise under common control and management. Parker Canada acts only at the direction of Parker USA and at all times they acted jointly and in concert with one another. Parker Canada and Parker USA are collectively referred to as "Parker".

### *Agreements to Acquire the Assets of Phoenix*

6.      In August 2013, Parker USA expressed an interest in purchasing the ongoing business of Phoenix, including the building located at 2620 - 21st Street N.E. in Calgary from which Phoenix carried on its business (the "Business"), by purchasing the shares of Phoenix.

7.      Subsequent to the expression of interest, Parker determined for its own reasons that it was preferable to acquire the assets of the Business and not the shares of Phoenix.

8.      The Plaintiffs were prepared to restructure the sale of the Business as an asset purchase, provided that the proposed consideration was adjusted to compensate the Plaintiffs for any adverse tax consequences arising from this restructuring.

9.      In November 2013, Parker Canada, Phoenix and 840501, *inter alia*, entered into an Asset Purchase Agreement ("APA") and a Real Estate Purchase Agreement ("RPA") under which Parker Canada agreed to acquire all of the Business assets.

10.     On January 7, 2014, Parker Canada, Phoenix and 840501, *inter alia*, entered into additional agreements, collectively with the RPA and APA, the "Purchase Agreements," including agreements establishing the currency conversion rate for closing and post closing adjustments thereto and setting out non-competition and employment arrangements.

11.     The effect of these Purchase Agreements was that Parker would acquire the assets of the Business on the terms and conditions set forth in the Purchase Agreements. The purchase consideration was to be adjusted so that the Plaintiffs would receive all of the same benefit they would have had the transaction been structured as a share sale.

12.     The Plaintiffs relied upon the Purchase Agreements in agreeing to the sale of the Business to Parker.

3

*Failure of Consideration and Breaches of Contract*

13.     Parker has breached each and every agreement it entered into relating to the purchase of the Business, particulars of the breaches are as follows.  Each of the Plaintiffs has suffered loss and damage as a result.

(a)     Parker failed to tender the agreed purchase price at closing;

(b)     Parker failed to tender adjusted purchase price amounts resulting from foreign currency exchange fluctuations in accordance with the terms of the Purchase Agreements despite multiple requests from the Plaintiffs.

(c)     Parker failed to provide the Plaintiff with the post-closing adjustments on or before April 7, 2014.

(d)     Parker failed to pay the post-closing adjustments in accordance with the terms of the APA despite multiple requests from the Plaintiffs.

(e)     Parker failed to respond to requests from the Plaintiff to provide the post closing adjustments subsequent to April 7, 2014.

(f)     Parker failed to provide the Plaintiffs with the substantiation to the post closing adjustments that were ultimately provided by the Defendants as required by the APA despite multiple requests from the Plaintiffs.

(g)     Parker failed to follow the dispute resolution process as set out in the APA despite multiple requests from the Plaintiffs.

(h)     Parker failed to abide by the terms of the employment agreement with Peter Hutton.

(i)     Parker failed to offer an employment agreement to the Cristen Cline subsequent to the closing of the Purchase Agreements.

(j)     Parker failed to negotiate the Purchase Agreements in good faith.

(j)     Parker induced the Plaintiffs to enter into the Purchase Agreements by false and negligent representations.

(k)     Such further breaches as may be proven at trial.

14.     More particularly, Parker breached the Purchase Agreements as follows:

(a)     Defendants have breached the following provisions, among others, of the APA: Sections 2.02, 2.03(a), 2.04, 2.05, 3.01, 3.03, 7.01, 7.11, 7.12, 7.15 and 8.01.

4

(b)     Defendants have breached the following provisions, among others, of the RPA: Sections 3.1, 3.2, and 5.7.

(c)     Defendants have breached all provisions of the Side Letter Agreement of January 7, 2014 by failing to pay amounts due by Defendants thereunder.

(d)     Defendants have breached provisions of the Escrow Agreement of January 7, 2014, relating to the Disbursement Funds, as defined therein, among others, by failing to release the Disbursement Funds per the terms of the agreement.

(e)     Defendants have breached all of their obligations under the Non-Competition Agreement of January 7, 2014 between Peter Hutton and Parker Hannifin Canada ("Parker Canada") by failing to pay amounts owed by Defendants thereunder.

(f)     Defendants have breached all of their obligations the Non-Competition Agreement of January 7, 2014 between Cristen Cline and Parker Canada by failing to pay amounts owed by Defendants thereunder.

(g)     Defendants have breached all of their obligations under the Non-Competition Agreement of January 7, 2014 between Peter Hutton and Parker USA ("Parker USA") Parker USA by failing to pay any amounts owed by Defendants thereunder.

(h)     Defendants have breached all of their obligations under the Non-Competition Agreement of January 7, 2014 between Cristen Cline and Parker USA by failing to pay any amounts owed by Defendants thereunder.

(i)     Defendants have breached all provisions of the Employment Agreement of January 7, 2014 between Peter Hutton and Parker USA including without limitation failing to provide compensation and benefits owed by Defendants thereunder.

(j)     Defendants have breached the Assignment and Assumption Agreement of January 7, 2014 by failing to pay amounts owed by Defendants for trade liabilities assumed thereunder.

(k)     Such further breaches as may be proven at trial.

15.     There has been a failure of consideration for the Purchase Agreements.   Parker's incomplete tender remains in full in the Escrow Account (as defined in the APA).

16.     Parker failed to negotiate the Purchase Agreements in good faith. Defendants approached Plaintiffs and offered to buy Plaintiff's business and represented to Plaintiffs set terms and condition from which Plaintiffs would benefit by transferring Plaintiffs' assets to Defendants. These terms and conditions are detailed in various agreements between Plaintiffs and Defendants.  Despite numerous requests by Plaintiffs to Defendants for an understanding as to why contractual items were not being completed, money was not being transferred, and

agreements were not being honored by Defendants, which included writing directly to the President of the group with whom we have been dealing and later to the same individual in his capacity as Chief Executive Officer of Defendant requesting an explanation for over a year, no answers or explanations were proffered by Defendants other than a "take it or leave it" offering from Defendants.  Plaintiffs were induced by Defendants into an arrangement that Defendants had no intention of honoring or completing.  Defendants misrepresented to Plaintiffs the terms of the exchange which the Plaintiffs relied upon in transferring Plaintiffs' assets to Defendants.

17.     The Defendants induced the Plaintiffs to enter into the Purchase Agreement by false or negligent representations.

18.     Representations made by Parker were made with a view to inducing the Plaintiffs into entering into the Purchase Agreements.

19.     The Plaintiffs relied upon the representations of the Defendants in continuing negotiations with Parker USA, in concluding the Purchase Agreements and in allowing the sale of Plaintiffs' ongoing business and assets to Defendants to close.

20.     More particularly, the Plaintiffs relied upon the following representations of the Defendants to their detriment:

(a)     Defendants represented to Plaintiffs that Parker was entering, and had entered, into the Purchase Agreements in good faith with the authority, ability and intention to fulfill their obligations set forth therein consistently and continuously over a period from May 2013 to January 7, 2014.  These representations were made by members of the management of Parker USA, including Tom Williams, John Greco, Dan Hartnett, and Adam Kratzert, and of Parker Canada, including Lynn Moline, on November 21, 2013 in Cleveland, Ohio and January 7, 2014 at the offices of Fasken Martineau in Calgary, Alberta.  The representations also were made at meetings in Cleveland, Ohio between Plaintiffs and the named representatives from Parker USA on the following dates: September 11-13, 2013, October 19-20, 2013, and November 19-22, 2013, and in Calgary, Alberta on January 6-7, 2014; and Parker Canada on the following dates:  November 21, 2013, and in Calgary, Alberta on January 6-7, 2014.  These representations are also expressly memorialized in the Purchase Agreements executed and delivered by Defendants to Plaintiffs on November 21, 2013 and January 7, 2014 between Defendants and Plaintiffs.  These representations were false as the Defendants had no intention at the time the representations were made to  fulfill the representation as the Defendants subsequently failed to adhere to the written terms of the Purchase Agreements by reason of not having one or more of the authority, the ability, the intention or the good faith to perform their obligations as represented.

(b)     Defendants represented to Plaintiffs during negotiations and afterwards Parker's stringent corporate commitment to ethical business practices, including the duty act in good faith and honestly, and communicated to Plaintiffs on multiple occasions Defendants' Global Code of

6

Business Conduct, including the following relevant excerpts: "Keeping Our Promises," "At Parker, we always cooperate and communicate openly with members of Parker's internal audit and compliance, accounting and legal teams . . .", "When we observe conduct that falls short of our values, we will put a stop to it. . ." and "Every day, throughout the world, every employee has the ability to influence Parker's reputation. Parker's success is the result of building a culture of doing more than just obeying the law. It comes from acting with integrity when dealing with each other, our customers and all of our stakeholders on a daily basis. The Code of Conduct guides our commitment to act honestly, with integrity, and to do what is right." Defendants represented to Plaintiffs that Plaintiffs could rely on the strict adherence by Parker representatives to Parker's corporate commitment to ethical business practices.

These representations were made to Plaintiffs consistently and continuously over a period from January 31, 2012 to January 7, 2014 by representatives of Parker, including specifically, John Greco, Dan Hartnett, Adam Kratzert and Tom Williams. Defendants' representation of its corporate commitment to ethical business practices is encapsulated in part in Defendants' Global Code of Business Conduct, which code was communicated to Plaintiffs by John Greco and Dan Hartnett, on or around October 8-9, 2012 and September 11-13, 2013. These representations were also made at meetings between Plaintiffs and Defendants in Kalispell, Montana on October 8-9, 2012; in Tulsa, Oklahoma on November 7-9, 2012; in Houston, Texas on November 24-29, 2012; in Calgary, Alberta on February 1, 2012, June 11, 2012, September14, 2012, March 6-8, 2013, August 5-7, 2013 and January 6-7, 2014; in Cleveland, Ohio on May 1-4, 2013, June 16-19, 2013, September 11-13, 2013, October 19-20, 2013, and November 19-22, 2013, and on multiple telephone calls between John Greco, Dan Hartnett and Plaintiffs over the period October 2012 to November 10, 2014, specifically including telephone calls with Dan Harnett during the period from October 27-29, 2012 and January 3-6, 2014 and Craig Beckwith from September 6-7, 2013.

Defendants' representations that Plaintiffs could rely on this ethical platform proved to be false as the Defendants had no intention at the time the representations were made of fulfilling the representation as the Defendants subsequently failed to adhere to the written terms of the Purchase Agreements and the terms of Defendants' Global Code of Business Conduct.

Parker's repeated statements with respect to its overriding ethical platform, binding upon its officers and employees, to act honestly, with integrity, and to do what is right at all times justified the Plaintiffs' reliance on all of the representations and agreements made by Parker representatives. Plaintiffs were induced into relying on the representations and agreements made by Defendants as being consistent with these ethical practices.

(c)     Defendants represented to Plaintiffs that, as a result of Phoenix intellectual property infringing on the intellectual property of competitor Anderson Greenwood, Parker was required to restructure the transaction from a stock sale to an asset sale were made over a period

from October 22, 2013 to January 7, 2014 by members of the management of Parker USA, including John Greco, Dan Hartnett and Adam Kratzert at meetings between Plaintiffs and Defendants in Cleveland, Ohio on October 23-25, 2013 and November 19-22, 2013 and in multiple telephone calls between Dan Hartnett, John Greco and Plaintiffs from October 22, 2013 until January 7, 2014. These representations were false as the Defendants knew at the time the representations were made that there was no intellectual property infringement as the Defendants failed to produce any written evidence of same despite repeated requests by the Plaintiffs.

(d)     Defendants represented to Plaintiffs that that Parker's internal tax and business practices and business organization, and ultimately Phoenix intellectual property infringing on the intellectual property of competitor Anderson Greenwood, required Defendants to structure the documentation of the transaction between varying corporate entities of Parker USA -- first being, the Defendant Parker USA, second being, Parker Hannifin Luxembourg Acquisitions S.a.r.l., and finally being Defendant Parker Canada.  These representations were made over a period from August 26, 2013 to January 7, 2014 by members of the management of Parker USA, including Tom Williams, John Greco, Dan Hartnett and Adam Kratzert.  More specifically, these representations were made in draft documents provided by Defendants to Plaintiffs on August 26, 2013, September 11-13, 2013, September 23, 2013, October 23-25, 2013, November 19-22, 2013 and January 6-7, 2014, and at meetings between Plaintiff and the named representatives in Cleveland, Ohio and Calgary, Alberta on the following dates September 11-13, 2013, October 19-20, 2013, November 19-22, 2013, and January 6-7, 2014.  These representations were false and/or misleading as the Defendants knew at the time the representation was made that there was no internal tax or business practice or intellectual property infringement requiring the change from a share sale to an asset sale as the Defendants have failed to provide any written evidence to the Plaintiffs.

(e)     Defendants represented to Plaintiffs that Defendants wanted to capitalize on the advanced manufacturing facilities at Phoenix for the production of co-planar manifolds that PGI (Parker) was having produced off-shore for sale in North America.  Based on these representations, Plaintiffs expended time and resources to design and develop fixturing, tooling and programming on Plaintiffs' existing equipment, as well as modifying the design of the manifold to better facilitate modern production techniques, and produced fully-developed samples for Parker marked with Parker's logo. These representations were made over a period of time from mid-2013 until January 7, 2014 by members of the management of Parker USA, including John Greco and Dan Hartnett at meetings between Plaintiffs and John Greco and Dan Hartnett in Calgary, Alberta on March 6-8, 2013 and August 5-7, 2013; and in Cleveland, Ohio on September 11-13, 2013, October 19-20, 2013, and November 19-22, 2013, and on multiple telephone calls between John Greco, Dan Hartnett and Plaintiffs over the period from March 6, 2013 to January 7, 2014.  These representations proved to be false as the Defendants never intended to produce the co-planer manifolds at the time the representation was made as subsequent to January 7, 2014 no co-planer manifolds were produced by the Defendants at the

8

Calgary plant facilities and Defendants have no current or future plans to produce co-planer manifolds at the Calgary facility.

(f)     Defendants represented to Plaintiffs that Parker USA would employ Peter Hutton and Cristen Cline post-closing.  These representations were made consistently and continuously over a period from January 18, 2013 to January 7, 2014 by members of the management of Parker USA, including Tom Williams, John Greco, Dan Hartnett and Nate Jackson at meetings held between Defendants and Plaintiffs in Kalispell, Montana on October 8-9, 2012; in Tulsa, Oklahoma on November 7-9, 2012; in Houston, Texas on November 24-29, 2012; in Calgary, Alberta on February 1, 2012, June 11, 2012, September 14, 2012, March 6-8, 2013, August 5-7, 2013 and January 6-7, 2014; in Cleveland, Ohio on May 1-4, 2013, June 16-19, 2013, September 11-13, 2013, October 19-20, 2013, and November 19-22, 2013, and on multiple telephone calls between John Greco, Dan Hartnett and Plaintiffs over the period October 2012 to January 7, 2014, specifically including telephone calls between Plaintiffs and Dan Harnett during the period from October 19-29, 2012 and January 3-7, 2014 and Craig Beckwith from September 6-7, 2013 and in agreements executed and delivered by Defendants to Plaintiffs on November 21, 2013 in Cleveland, Ohio and January 7, 2014 at the offices of Fasken Martineau in Calgary, Alberta. These representations were false as the Defendants never intended at the time the representations were made to employ either Peter Hutton or Cristen Cline post-closing as subsequent to January 7, 2014 the Defendants stated that in regards to Peter Hutton there was only an alleged employment agreement which the Defendants unilaterally attempted to convert to a consulting agreement on different terms and the Defendants failed to provide a written employment agreement to Cristen Cline after January 7, 2014.

(g)     Defendants represented to Plaintiffs that Defendants would make Plaintiffs whole with respect to, and indemnify Plaintiffs against, any liability arising from the Defendants' election to treat the transaction as, or amend the transaction to, an asset purchase as opposed to a share purchase, including specifically that Defendants would fund in full additional tax liability to Plaintiffs arising from the Defendants' election.  These representations were made over a period from September 23, 2013 to January 7, 2014 by members of the management of Parker USA, including Tom Williams, John Greco, Dan Hartnett, and Adam Kratzert at meetings between Plaintiffs and Defendants on October 19-20, 2013, November 19-22, 2013, and January 6-7, 2014 and in draft documents provided by Defendants to Plaintiffs on September 23, 2013, October 23-25, 2013 and November 19-22, 2013 and January 6-7, 2014.  These representations proved to be false as the Defendants had no intention at the time the representation was made of fulfilling the representation as the Defendants failed after January 7, 2014 to tender amounts for additional liabilities to Plaintiffs arising from the Defendants' election to structure the transaction as an asset purchase as opposed to a share purchase in accordance with the Purchase Agreements.

9

      (h)    Defendants represented to Plaintiffs that Defendants would make Plaintiffs whole with respect to, and indemnify Plaintiffs against, any liability arising from the change in structure of the transaction from a share purchase to asset purchase, including specifically the representation that Defendants would fund in full additional tax liability to Plaintiffs arising from the change.  These representations were made over a period from October 22, 2013 to January 7, 2014 by members of the management of Parker USA, including John Greco, Dan Hartnett, and Adam Kratzert at meetings held in Cleveland, Ohio on October 23-25, 2013 and November 19-22, 2013 and in Calgary on January 6-7, 2014 and in multiple telephone calls between Dan Hartnett, John Greco and Plaintiffs over the period from October 22, 2013 until January 7, 2014.  These representations are memorialized in agreements executed and delivered by Defendants to Plaintiffs on November 21, 2013 in Cleveland, Ohio and January 7, 2014 at the offices of Fasken Martineau in Calgary, Alberta.  These representations proved to be false as the Defendants had no intention of fulfilling the representation at the time it was made to the Plaintiffs as the Defendants failed to tender amounts after January 7, 2014 for additional liabilities to Plaintiffs arising from the Defendants' election to amend the transaction to an asset purchase as opposed to a share purchase in accordance with the terms of the Purchase Agreements.

      (i)    Defendants represented to Plaintiffs that the Escrowed Funds and Disbursement Funds would be held by the Escrow Agent in Canadian dollars over a period from October 22, 2013 to January 7, 2014 by members of the management of Parker USA, including John Greco, Dan Hartnett, and Adam Kratzert at meetings held between Plaintiffs and Defendants in Cleveland, Ohio on October 19-20, 2013, and November 19-22, 2013.  These representations were false as the Defendants had no intention of fulfilling with the representation at the time it was made to the Plaintiffs as the Defendants allowed the escrow funds to be converted to US dollars at closing.

      (j)    Defendants represented to Plaintiffs that there were only two (2) investment options available from KeyBank, the escrow agent installed by Parker USA, for funds deposited by Parker with KeyBank in connection with Defendants transaction with Plaintiffs.  These representations were made over a period from October 22, 2013 to January 7, 2014 by members of the management of Parker USA, including John Greco, Dan Hartnett, and Adam Kratzert at meetings held between Plaintiffs and Defendants in Cleveland, Ohio on October 19-20, 2013, and November 19-22, 2013 and January 7, 2014 at the offices of Fasken Martineau.  These representations were false as the Defendants knew at the time that the representation was made to the Plaintiffs that there were additional investment options available from the escrow agent which the Defendants failed to disclose to the Plaintiffs.

      (k)    Such further misrepresentations as may be proven at trial.

Each of the Plaintiffs has suffered loss and damage as a result.  The Plaintiffs, and each of them, relied upon these representations and upon the honesty and good faith of Defendants in entering

into the Purchase Agreements with Defendants.  Defendants negotiated the Purchase Agreements in bad faith with the intention of not fulfilling the provisions of these agreements.

21.    The Plaintiffs state that the Defendants made all of the above-stated representations to Peter Hutton and Cristen Cline in their capacity as officers and management of the Plaintiffs:

      (a)    at the times, locations and places stated above;

      (b)    in the manner by the Defendants' management as stated above;

      (c)    which representations were all false and which representations were known by the Defendants to all be false at the time they were made;

      (d)    which representations induced the Plaintiff to proceed with the sale of the Plaintiff's business as proposed by the Defendants;

      (e)    which representations the Plaintiffs' relied upon;

      (f)    which representations caused the Plaintiffs' to transfer business assets to the Defendants; and

      (g)    which representations caused loss and damage to the Plaintiffs as follows.

22.    By reason of the misrepresentations of the Defendants and the want of consideration for the Purchase Agreements, the Plaintiffs are entitled to an order of rescission declaring the Purchase Agreements void and the return of their property to them.

### Duty to Act in Good Faith

23.    Parker was under a duty, express or implied, to act in good faith and to deal honestly and genuinely with the Plaintiffs.

24.    The Plaintiffs, and each of them, relied upon the honesty and good faith of Parker in entering into the Purchase Agreements.

25.    In breach of its duty of good faith, Parker did not deal honestly or fairly with the Plaintiffs.   Upon the closing of the Purchase Agreements, Defendants embarked upon a concerted and consistent course of conduct designed to frustrate all of its post closing obligations.

26.    The Plaintiffs propose that the trial of the action be at the Court House in the City of Calgary, in the Province of Alberta, and states that in its opinion the trial will not exceed 10 days.

*Remedy sought*

27.     An Order of rescission directing that the purchased assets be returned to the Plaintiffs and the balance remaining in the escrow account be refunded to Parker

28.     In the alternative, an order of specific performance directing Parker to complete the Purchase Agreements in accordance with their terms.

29.     An award of damages to be paid by Defendants to Plaintiffs, in amounts as may be proven at trial and in addition to the amounts currently held in escrow, for: (a) breach of the agreement to timely pay in full the purchase price and all closing and post-closing adjustments payable; (b) breach of the agreement by Defendants to pay non-compete payments; (c) payment for the employment services rendered to Defendants on a quantum meruit basis; (d) breach of the agreement to provide payment for transitional services rendered to Defendants; (e) damages for breach of the agreement to provide employment; (f) damage to the business assets of Phoenix Precision Ltd. since January 7, 2014, including failure to maintain patents and protect intellectual property, failure to develop market opportunities for new product, impugning existing intellectual property, removing products from the marketplace, exposing the business to in excess of $2.5 million in excess cost of goods sold, introducing additional labour cost; (f) such other damages as may be proven at trial, including those resulting from Defendants' misrepresentations and Defendants' failure to act in good faith, and (g) punitive and/or exemplary damages, plus (h) interest from the date of closing to the date of Judgement at the rates set out in the agreements referred to herein or as otherwise provided by the court.

Damages to date as follows:

| | |
|---|---|
| Funds In Escrow | USD14,737,290.70 |
| Interest** | USD437,697.53 |
| Additional Damages (stated in CAD) | |
| Closing and Post Adjustments | $4,953,276.87 |
| Interest on Balance Sheet Adjustments** | $61,304.75 |
| Employment Agreement Hutton | $2,850,000.00* |
| Employment Agreement Cline | $1,140,000.00* |
| Transition Services | $390,600.00 |
| Transition Expenses | $28,500.00* |
| Damage to Business | $2,500,000.00 |
| Non-compete payments | $1,140,000.00 |
| Manifold and Fixturing Expense | $100,000.00 |
| Interest on Amounts Owed Excluding Balance Sheet Adjustment ** | <u>$329,656.60</u> |
| | CAD $13,493,338.22 |

\* exchange rate of 1.14 used for demonstration purposes
\*\* interest rate of 2.97%, not compounded, used for demonstration purposes

30.     Punitive or exemplary damages in an amount to be proven at trial.

12

31.    A declaration that all non-competition provisions in the agreements are null, void and unenforceable.

32.    Costs of this action on a solicitor and his own client basis.

---

**NOTICE TO THE DEFENDANTS**

You only have a short time to do something to defend yourself against this claim:

20 days if you are served in Alberta

1 month if you are served outside Alberta but in Canada

2 months if you are served outside Canada.

You can respond by filing a statement of defence or a demand for notice in the office of the clerk of the Court of Queen's Bench at Calgary, Alberta, AND serving your statement of defence or a demand for notice on the plaintiff's(s') address for service.

**WARNING**

If you do not file and serve a statement of defence or a demand for notice within your time period, you risk losing the law suit automatically.  If you do not file, or do not serve, or are late in doing either of these things, a court may give a judgment to the plaintiff(s) against you.

---

Consented to filing, without prejudice to any application the Defendants may bring in respect of this Amended Amended Statement of Claim, this 16th day of October, 2015 by

FASKEN MARTINEAU DuMOULIN LLP

Per

Robert D. Maxwell
Solicitors for the Defendants